IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| APTIVE ENVIRONMENTAL, LLC | § § § | |
| Plaintiff, | § § | CASE NO. 1:16-cv-00775 |
| vs. | § § | |
| LIBERTY TOWNSHIP, OHIO | § § § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**

## I. NATURE OF THE CASE

1. Liberty Township maintains an ordinance prohibiting certain types of door-to-door commercial solicitation after 5pm (the "Curfew"). Under well settled Supreme Court and Sixth Circuit case law, this Curfew is manifestly unconstitutional. Indeed, less than four years ago, the Sixth Circuit – in a case arising out of this same judicial district– invalidated as unconstitutional an ***even-later, content-neutral*** 6pm solicitation curfew imposed by Englewood, Ohio. *See Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012). Accordingly, Aptive asks the Court to invalidate the Curfew, enter injunctive relief restraining its enforcement, and award Aptive the hundreds of thousands of dollars in damages it has sustained as a result of this unconstitutional restraint on its free speech rights and the free speech rights of the citizens of Liberty that want and need its services.

## II. JURISDICTION

2. Plaintiff brings this action to redress deprivations by Defendant of certain rights secured to Plaintiff by the First and Fourteenth Amendments of the United States Constitution.

This Court therefore has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983.

### III. VENUE

3. Venue lies with this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in the Southern District of Ohio, Western Division.

### IV. DECLARATORY RELIEF

4. This Court has authority to enter the declaratory relief sought by plaintiff pursuant to 28 U.S.C. § 2201 and by Federal Rule of Civil Procedure 57.

5. Plaintiff is entitled to recover its reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1983.

### V. PARTIES

6. Plaintiff Aptive Environmental, LLC ("Aptive") is a limited liability company organized under the laws of the State of Utah. Plaintiff has engaged in and intends to engage in activities regulated by Liberty Township Resolution No. 2006-046 (the "Resolution"). A copy of the Resolution is attached as Exhibit A.

7. Defendant Liberty Township is a township organized under the laws of Ohio. It may be served by delivering a copy of the summons and of this complaint to its chief executive officer.

### VI. FACTUAL BACKGROUND

8. Aptive is a large, well-established pest control company with offices throughout the country. Aptive's market includes cities throughout Northern Ohio, including Liberty Township. Aptive's sales are made almost exclusively through door-to-door solicitation. Moreover, its most successful hours of the day are between the hours of 5pm and 9pm (dusk),

when most residents are at home and available. Accordingly, ordinances that impose end-of-the-day solicitation curfews have a direct and substantial impact on Aptive's business.

9. Aptive acquires a substantial majority of its new customers during its March to September sales season.

10. Liberty adopted the Curfew on April 17, 2006. Relying on Ohio Revised Code § 505.94 (the "Enabling Statute") for authority, the Resolution prohibits door-to-door solicitation after 5 p.m. Exhibit A.

11. Ohio Revised Code § 505.94 provides that "[a] board of township trustees may, by resolution, require the registration of all transient vendors within the unincorporated territory of the township and may regulate the time, place, and manner in which these vendors may sell . . . or the board may, by resolution, prohibit these activities within that territory." Ohio Rev. Code § 505.94(A). Section 505.94(B)(2) defines "transient vendor" as "any person who opens a temporary place of business for the sale of goods who, on the streets or while traveling about the township, sells or offers for sale goods . . ." Id. Section 505.94's definition of "goods" includes Plaintiff's services.

12. Section 505.94(B)(2)'s definition of a "transient vendor" specifically excludes persons "who represent any entity exempted from taxation under Section 5709.04 of the Revised Code," which includes "corporations, trusts, associations, funds, foundations or community chests, organized and operated exclusively for religious, charitable, scientific, literary, health, hospital, educational, or public purpose." Ohio Rev. Code §§ 505.94(B)(2), 5709.04. It also specifically excludes "persons licensed under Chapter 4707 of the Revised Code." Id. Chapter 4707 governs the licensing of "auctioneers" and "apprentice auctioneers," which it defines as any

person who "offers for the purchase of real or personal property, goods, or chattels at auction." Ohio Rev. Code § 4707.01(A) – (C).

13. The Resolution incorporates the Enabling Statute's definition of "transient vendors." Exhibit A. Accordingly, the Curfew is not content neutral. Instead, it allows post-Curfew commercial solicitation, but only if you "represent" a "religious, charitable, scientific, literary, health, hospital, educational, or public purpose" or if you are a licensed "auctioneer." For the same reasons, the Curfew does not eliminate post-Curfew commercial solicitation in Liberty; it simply restricts it to certain favored classes of persons.

14. The Resolution also requires that transient vendors seek a permit before conducting home solicitation in Liberty Township and that all registered salespersons to wear a "Registered Solicitor Badge" while conducting door-to-door sales. *Id.*

15. Aptive registered with Liberty Township in June 2016, as is required by the Resolution. Liberty Township then issued Plaintiff a set of "Registered Solicitor Badges."

16. Shortly thereafter, Plaintiff's counsel contacted Scott Phillips, counsel for Liberty, requesting that Liberty repeal and/or suspend the enforcement of the Curfew because it was unconstitutional. Liberty, however, has failed to do so, necessitating this suit.

17. Notably, the City has not even attempted to offer or identify any legitimate state interests it intended to advance through the Curfew imposed by the Resolution nor explained why these (yet undisclosed) interests cannot be advanced by far less intrusive remedies – like forbidding solicitation of only those residents who choose to put "No Soliciting" signs on their doors. *See, e.g., Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton*, 536 U.S. 150, 168 (2002) (observing that an ordinance that "provides for the posting of 'No Solicitation' signs . . . coupled with the resident's unquestioned right to refuse to engage in conversation with

unwelcome visitors, provides ample protection for the unwilling listener."); *Ohio Citizen Action v. City of Englewood,* 671 F.3d 564, 570 (6th Cir. 2012) ("[T]here are far less intrusive ways to preserve residential privacy than by [curfew ordinances] restricting all manner of speech. . . Englewood's ordinance allows residents to avoid being inconvenienced by door-to-door canvassers at dinnertime by simply posting a "No Soliciting" sign on their property").

18. Indeed, Liberty's only offered justification for the Curfew was the Enabling Statue, which it claimed gives it the right to impose the Curfew.

19. Aptive has suffered—and continues to suffer—significant damages as a result of this unconstitutional Curfew and the Enabling Statute. First, Aptive has lost the ability to exercise its valuable commercial speech rights. Second, the Curfew has caused and will continue to cause significant harm to Aptive. Because Aptive's sales are made almost exclusively by door-to-door solicitation – and the vast majority of those, after the hours of 5pm – the Curfew directly and substantially impacts Aptive's revenue and profits. In fact, Aptive has lost and continues to lose thousands of dollars in revenue each day it is prohibited from soliciting after the Curfew in Liberty, amounting to hundreds of thousands of dollars of lost profits.

20. Just as significant, however, is the effect of the Curfew on Aptive's relationship with is customers. Aptive's unique business model is predicated upon establishing a personal and trusting relationship with its customers, getting to know their homes and their individual needs so as to customize and tailor the service it provides. Aptive's and its founder's many years in the industry have underscored that other forms of less personal marketing—including phone solicitation, email campaigns, and web advertisements—are simply not an effective means for establishing or maintaining this necessary personal relationship with its customers. By restricting

its ability to solicit its customers in person, the Curfew directly interferes with Aptive's ability to effectively and efficiently serve its current and future customers.

21. Finally, the Ordinance substantially restricts the free speech rights of the many residents of Liberty Township who do not object to post-Curfew door-to-door solicitation and want or need Aptive's services. By restricting the solicitation of such residents, the City is violating the First Amendment rights of these residents to receive speech. *See, e.g., City of Watseka v. Illinois Public Action Counsel*, 796 F.2d 1547 (7th Cir. 1986), (observing that door-to-door solicitation restrictions improperly "derogate the First Amendment rights of [the company] and those of [the City's] residents who would be willing recipients of [the company's] message . . . to the nuisance concerns of those residents who would not be willing listeners")

### VII. CAUSE OF ACTION: UNCONSTITUTIONAL SOLICITATION BAN

22. Plaintiff restates and re-alleges ¶¶ 1-21 and incorporates the same by reference.

23. On their face and as applied, the Resolution and the Enabling Statute violate the First and Fourteenth Amendments to the United States Constitution. *See, e.g., Vill. Of Shaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) (invalidating municipal ordinance that prohibited door-to-door solicitation); *Ohio Citizen Action,* 671 F.3d at 572 (invalidating a 6pm solicitation curfew); *Project 80's Inc. v. City of Pocatello*, 942 F. 2d 635 (9th Cir. 1991) (invalidating a ban on solicitation); *City of Watseka v. Illinois Public Action Counsel*, 796 F.2d 1547 (7th Cir. 1986) (invalidating a 5pm solicitation curfew); *New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250 (3d Cir. 1986) (invalidating a 5pm, 6pm, and sunset solicitation curfew); *Wisconsin Action Coalition v. City of Kenosha*, 767 F.2d 1248 (7th Cir. 1985) (invalidating an 8pm curfew); *Association of Community Organizations for Reform v. City of Frontenac*, 714 F.2d 813 (8th Cir. 1983) (invalidating a 6pm curfew).

24. The fact that the Curfew imposed by the Resolution and specifically permitted by the Enabling Statute is not content-neutral is an additional, independent reason both are constitutionally invalid.

25. Finally, the fact that the Enabling Statute purports to authorize a complete prohibition on *all* commercial solicitation makes that statute unconstitutional on its face. *See* Ohio Rev. Code § 505.94(A) (providing that, in addition to "regulating" solicitation, "the board may, by resolution, *prohibit* these activities within that territory.") (emphasis added).

### VIII. REQUEST FOR PRELIMINARY INJUNCTION

26. <u>Irreparable Injury</u>. The harm, loss, and injury resulting from enforcement of the Curfew is great, immediate, and irreparable because Plaintiff and others similarly situated will be deprived of rights protected by the First and Fourteenth Amendments of the United States Constitution. Infringements upon free speech are *per se* irreparable injuries. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionable constitutes irreparable injury.").

27. <u>Inadequate Remedy at Law</u>. No remedy at law suffices to redress Plaintiff's grievances. A money judgment will not compensate Plaintiff for its loss of constitutionally protected rights of free speech.

28. <u>Substantial Likelihood of Success</u>. The likelihood of Plaintiff ultimately succeeding on the merits is great, given recent Sixth Circuit case law arising out of this judicial district invalidating a 6pm solicitation curfew as unconstitutional. *Ohio Citizen Action,* 671 F.3d at 572.

29. <u>Plaintiff's Interest Balanced Against the Interest of the Defendant and the Public</u>.

*First*, the Defendant will suffer no harm if this Court issues injunctive relief. No legitimate governmental purpose is served by the Resolution or the Enabling Statute. Moreover,

other less intrusive remedies are available to Liberty Township to advance the Resolution's and Enabling Statute's ostensible purposes – like forbidding solicitation of only those residents who choose to put "No Soliciting" signs on their doors. *See, e.g., Watchtower Bible* 536 U.S. at 168; *Ohio Citizen Action,* 671 F.3d at 572. On the other hand, if enforcement of the Curfew continues, the result will be an irreparable and immeasurable harm and chilling of the exercise of the right of free speech, and will result in ongoing and compounding financial loss toAptive.

***Second***, the most important public interest involved in this matter is the constitutional right to free speech. The public has a strong interest in protecting the pathways of information and in curbing encroachment of free speech rights. The Supreme Court has held that the First Amendment services

> "'[s]ignificant societal interests' wholly apart from the speaker's interest in self-expression. By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information. The identity of the speaker is not decisive in determining whether speech is protected. Corporations and other associations, like individuals, contribute to the 'discussion, debate, and the dissemination of information and ideas' that the First Amendment seeks to foster."

*Pacific Gas & Elec. V. P.U.C. of California*, 475 U.S. 1, 8 (1986) (internal citations omitted). The public interest, therefore, lies in protecting the marketplace of ideas by issuance of injunctive relief.

30. Given the irreparable harm cause by the Resolution and the Enabling Statute on Aptive's speech, and the fact that requiring a bond or other security to exercise free speech rights would amount to a prior restraint, this Court should require no additional security pursuant to Federal Rule of Civil Procedure 65(c). *See, e.g.*, *Northshor Experience, Inc. v. City of Duluth*, 442 F. Supp. 2d 713, 723 (D. Minn. 2006) (allowing court to wave security requirement at its discretion, in part because requiring security could prevent judicial review of statutes' constitutionality and prevent vindications of important First Amendment Rights). To the extent

ordered by the Court, however, Plaintiff is willing to post a bond in the amount the Court deems appropriate.

31. Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against the Defendant.

## IX. REQUEST FOR PERMANENT INJUNCTION

32. Plaintiff asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against the Defendant.

## X. DAMAGES

33. As a direct and proximate result of Defendant's passage and enforcement of the Resolution pursuant to the Enabling Statute, Plaintiff has suffered: (a) lost earnings, (b) lost profits and other consequential damages, and (c) loss of Plaintiff's First Amendment freedoms.

## XI. PRAYER

34. WHEREFORE, Plaintiff respectfully requests that the Court issue:

   a. A preliminary injunction enjoining the enforcement of the Resolution by Defendant, its agents, and its employees against Plaintiff and others similarly situated;

   b. A permanent injunction enjoining the enforcement of the Resolution by Defendant, its agents, and its employees against Plaintiff and others similarly situated;

   c. A declaration that the Resolution and the Enabling Statute violate the First and Fourteenth Amendments of the United States Constitution on their face;

   d. A declaration that the Resolution and the Enabling Statute violate the First and Fourteenth Amendments of the United States Constitution as applied to Plaintiff;

e. A declaration that Defendant has violated Plaintiff's constitutional rights, and that Plaintiff has suffered damages as a result;

f. A judgment awarding Plaintiff its damages caused by Defendant's unconstitutional actions;

g. An order requiring Defendant to pay all costs, interest, and attorneys' fees as may be incurred with this civil action pursuant to 42 U.S.C. § 1988; and

h. An order providing such other and further relief as the Court deems just and proper and for the purpose of redressing Plaintiff's grievances.

Dated: July 25, 2016

Respectfully submitted,

BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC

*/s/ Andrew J. Pullekins* (Local Counsel)
Andrew J. Pullekins (0085344)
3800 Embassy Parkway, Suite 300
Akron, OH  44333
Phone: (330) 376-5300
Fax: (330) 258-6559
Email: apullekins@bdblaw.com

-and-

Jeremy A. Fielding (*pro hac* to be filed)
Texas State Bar No. 24040895
Ben A. Barnes (*pro hac* to be filed)
Texas State Bar No. 24092085
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 - Telephone
214-981-3839 – Facsimile
Email:  bbarnes@lynnllp.com
         jfielding@lynnllp.com

**ATTORNEYS FOR PLAINTIFF
APTIVE ENVIRONMENTAL, LLC**

CL2:449453_v1